**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| IRA WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00226-TWP-DML |
| | ) | |
| VALEO LIGHTING SYSTEMS NORTH | ) | |
| AMERICA, INC, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Valeo Lighting Systems North America, Inc. ("Valeo") (Filing No. 46). Following his termination, Plaintiff Ira White ("White") initiated this action against his former employer, Valeo, for violations of the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA") (Filing No. 1). Valeo seeks judgment as a matter of law asserting that White's employment was terminated because of his violation of the attendance policy and had nothing to do with his age or alleged disability, and there was no interference nor retaliation concerning his FMLA rights. For the following reasons, the Court **grants in part** and **denies in part** Valeo's Motion.

**I.      BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to White as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Valeo manufactures lighting products such as headlamps, fog lamps, side-marker lamps, as well as rear deck lighting products (Filing No. 47-1 at 2). White worked for Valeo in their Seymour, Indiana warehouse. *Id.* Starting in 2007, White was eventually promoted to Team Lead between 2015 and 2016 (Filing No. 62-1 at 6, 12). White's job as a Team Lead consisted of working the weekend shift from 7:00 p.m. to 7:30 a.m., Friday nights to Monday mornings (Filing No. 47-1 at 2). His duties were generally limited to making sure his team was in the right locations, counting empty containers, and cleaning the machines—such as coaters—in the warehouse (Filing No. 62-1 at 12). Cleaning the coaters involved getting inside the machines to remove debris and lifting between twenty and twenty-five pounds when necessary. *Id.* White also owned a pizza shop in Seymour where he also worked during his employment with Valeo. *Id.* at 4.

White's supervisors at Valeo during the relevant time were Production Supervisor Mike Holder ("Holder") from January 2018 to May 5, 2019, followed by Production Supervisor Suzanne Thevenot ("Thevenot") beginning on May 5, 2019 (Filing No. 47-1 at 3). Jeff Thomas ("Thomas") was the Labor Relations Manager at Valeo (Filing No. 47-5 at 14). Thomas was authorized to hire and terminate employees, and was responsible for recruitment, trainings, and issuing corrective actions (Filing No. 62-2 at 3). Thomas was also responsible for directing employees to the Occupational Health Manager, Tallas Cutshall ("Cutshall"), when they needed time off work (Filing No. 47-5 at 7).

Cutshall was responsible for assisting employees after they filed for FMLA or a short-term disability claim (Filing No. 47-4 at 5). Cutshall would provide information needed to contact Guardian—Valeo's third-party FMLA and short-term disability administrator—to have their leave request approved or denied. *Id.* at 13. Cutshall did not keep track of employee's attendance,

however she had the authority to remove an employee's absences if such absences were associated with medical leave. *Id*. at 5.

Valeo's attendance policy required employees to provide notice requesting leave to either their supervisors (Filing No. 62-14 at 2), or to Cutshall (Filing No. 47-4 at 5), or to the Human Resources department ("HR") (Filing No. 62-3 at 8). If notice of an employee's intent to take leave was given to a supervisor, the supervisor would direct the employee to Cutshall, who would refer them to Guardian (Filing No. 62-14 at 5). If an employee provided notice of their intent to take leave directly to an HR associate, that HR associate could provide information regarding Guardian so that the employee could "contact them to set up a claim." (Filing No. 47-4 at 16.)

Valeo used a point system to track the unexcused absences of employees (Filing No. 62-14 at 3). Two points were accumulated for each day an employee fails to report; one point if the absence was reported beforehand; and one-half point for each consecutive day after the first day of absence, for up to three days total. *Id*. at 1. An employee with three consecutive absences would be considered to have voluntarily resigned if they had not notified Valeo. *Id*. at 2. An employee could only return to work after being absent for three days or more if they had a doctor's statement. *Id*. An absence of one day—referred to as an "occurrence" by Valeo—did not accrue points if covered by FMLA, short-term disability, worker's compensation, or personal leave. *Id*.

The number of points accrued by an employee corresponded with progressive corrective action. *Id*. at 3. Six points resulted in a "First Written Warning," reviewed by an employee's supervisor. Eight points caused a "Second Written Warning," which was reviewed by the supervisor and area manager. *Id*. Ten points resulted in a "Final Warning/180 day letter," that was reviewed by the supervisor and area manager. *Id.* A "180 day letter" would notify the employee that they were being placed on a "monitoring program as a result of their attendance

pattern." *Id.* An employee who accumulated more than ten points underwent a "Termination Review," by their supervisor and area manager. *Id*.

During the relevant period, the attendance policy allowed an employee to be credited points that could remove points for absences. *Id*. at 2. If an employee had no occurrences during a ninety-day or 520-hour period, they would be able to earn two points that would be used to remove current points or future points. *Id*. An employee who takes short-term disability, worker's compensation, unpaid personal leaves or absences, unpaid FMLA, or outpatient surgery breaks the ninety-day/520-hour cycle. *Id.* The maximum bankable credit points could not exceed four points. *Id*. at 3. Should Guardian approve an employee's FMLA leave, and the employee puts Valeo and Guardian on notice of future absences that are allowed by the FMLA, the employee will not receive attendance points. *Id*.

On March 2, 2019, White was issued a Final Warning/180-day letter because he had ostensibly accrued ten points (Filing No. 62-1 at 26). His total points were later adjusted after Holder, his supervisor, informed HR that some of White's prior absences were approved for FMLA (Filing No. 62-2 at 6). HR forwarded the information to Cutshall (Filing No. 62-8 at 1–2). Cutshall subsequently adjusted White's total points from ten to eight by the end of March 2019 (Filing No. 62-3 at 16).

In May 2019, White began experiencing bleeding ulcers accompanied by vomiting, stomach pain, and bloody stools (Filing No. 62-1 at 36). White could not do anything at Valeo while experiencing this medical condition. *Id*. at 27. He informed Holder via text message that he would be unable to come to work on Friday, May 3, 2019 because his "intestines are bleeding again." (Filing No. 62-4 at 1.) Holder responded to the text message but did not address White's medical condition or his intent to take time off work. *Id.* at 2. White did not inform anyone else

at Valeo that he would be off beginning May 3, 2019 to May 5, 2019, the weekend shift. (Filing No. 62-1 at 28).

The following weekend, White texted Holder again and informed him that he would not be coming into work for his weekend shift from May 10, 2019 to May 12, 2019. *Id.* Holder advised White: "Make sure you get with HR as soon as you get back." (Filing No. 62-4 at 2.) White informed Holder on Saturday, May 11, 2019, that his doctor directed him to not go into work until May 20, 2019, when he would be able to see a specialist. *Id.* White told Holder that he would speak to "HR and [Cutshall] Monday." *Id.* Holder told White that he would email Cutshall that evening and "let her know that you'll be in touch. *Id.* at 3. Holder emailed Cutshall, Thomas (Labor Relation Manager), Thevenot (White's new supervisor), and the HR representative Patty Burgett ("Burgett") that White would be out until at least May 20, 2019 (Filing No. 62-9).

White did not directly notify HR, Cutshall, or anyone else at Valeo (besides Holder) about his medical condition (Filing No. 62-1 at 29). However, beginning on or around May 6, 2019 to May 13, 2019, White dropped off  the first of several "doctor slips," or notes, with the security guards at Valeo, to be given to Cutshall. *Id.* He included his contact information on the doctor's notes. *Id.* White did not bring the doctor's notes directly to Cutshall because he did not have proper PPE ("personal protective equipment") which would allow him to get through security. *Id.* White testified that he was told by the security guards that Valeo instructed them to take the notes and they would place them in the appropriate recipient's mailbox. *Id.* During White's previous requests for leave, he was working in the building and had never left notes for Cutshall or HR. *Id.*

The first doctor's note, dated May 3, 2019, stated that White's absence was advised by a physician "due to illness or injury." (Filing No. 62-15.) It noted that White was seen by the physician and he should be off work from May 3, 2019 to at least May 11, 2019. *Id.* At the top

of the note, handwritten, was White's name and his cell phone number. *Id*. A doctor's note dated May 11, 2019, reiterated the same as the first but noted that White was instructed to be "off work until further evaluation on 5/22/19." (Filing No. 62-13.) A third doctor's note dated May 22, 2019, stated that White would be off work until "5/31/19." (Filing No. 62-5.) A fourth doctor's note dated May 31, 2019, stated that White was "unable to work 5/3/10 to 6/3/19" and specified that "6/4/19" was the date on which he could return to work (Filing No. 62-6). A final doctor's note dated June 7, 2019, stated that White was instructed to be off work until "further evaluation on 6/21/19". (Filing No. 62-16.)

During the period between May 3, 2019 and June 24, 2019, Cutshall received several doctor's notes from White that were left with Valeo security (Filing No. 62-3 at 12). He attempted to call White directly at least twice but did not get in contact with him. *Id*. Cutshall did not attempt to email White or contact him in any other way after failing to reach him by phone. *Id*. Although he did not have a reason to believe that Cutshall would lie, White did not receive a call from her regarding his absences during this time (Filing No. 62-1 at 29). Cutshall did not leave any voicemails for White (Filing No. 62-3 at 12).

On May 31, 2019, White texted his new supervisor, Thevenot, saying that he would be coming back to work the following weekend (Filing No. 62-7 at 1). White informed Thevenot that if his medical condition improved, he would be able to return. *Id*. Thevenot was unaware of White's condition and his return-to-work status. *Id*. The following weekend, White did not return to work. He instead sent Thevenot a text message consisting of an image of the doctor's note dated June 7, 2019, which stated that he would be off work until at least June 21, 2019. *Id*. at 2. Accompanying the image was White's message: "I'll be off till the 21th [sic]. Just went to the dr." *Id*. Thevenot did not respond to this message.

On June 11, 2019, HR Representative Burgett requested that a termination disposition be filled out for White (Filing No. 62-19 at 1).  On June 21, 2019, White returned to work (Filing No. 62-1 at 34).  Thevenot and another supervisor asked White to leave and escorted him out of the building.  *Id*.  White was instructed to call Cutshall or Thomas, the Labor Relations Manager, the following Monday.  *Id*.  White called Cutshall on Monday, June 24, 2019, and he was informed that he had been terminated because he did not request FMLA leave for his absences and because he was a "no call, no show" for three days. *Id*. at 35. White explained to Cutshall that he told Thevenot that he would be off work until June 21, 2019, in his June 7, 2019 text message to her. *Id.*  Cutshall informed White that Thevenot never relayed the message.  *Id*.

Thomas reviewed White's absences in May 2019 and June 2019, to "determine whether [White's] June 11, 2019 termination should stand." (Filing No. 47-1 at 4.) Thomas concluded that White's absences from June 7 to June 10, 2019, were mistakenly classified as "no-call, no-shows" but were still unexcused and accrued attendance points. *Id*. Thomas determined that White's eighteen "unapproved absences between May 3, 2019 and June 11, 2019," accumulated twelve attendance points.  *Id*.  Ultimately, Thomas decided that White was still subject to termination as of June 11, 2019, because the accumulation of the attendance points, White's "failure to request FMLA leave, his failure to contact Guardian, and his failure to contact [Cutshall] or [HR]," violated Valeo's attendance policy.  *Id*. at 5.

On October 30, 2019, White initiated this action alleging his termination was due to his disability and his age in violation of the ADA and ADEA, respectively (Filing No. 1 at 3).  He also alleges interference and retaliation in violation of the FMLA.  *Id*.  seeks summary judgment on all claims (Filing No. 46).

## II.   <u>LEGAL STANDARD</u>

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante,* 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim*." Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties

nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

In Count I of his Complaint, White alleges that he was terminated due to his disability in violation of the ADA, 42 U.S.C. 42 § 12101, *et seq.* (Filing No. 1 at 3). In Count II, he alleges violation of the ADEA, 29 U.S.C. §§621-634. *Id.* In Counts III and IV, White asserts that Valeo interfered with his FMLA rights and retaliated against him, in violation of 29 U.S.C. § 2601, *et seq. Id.* Valeo seeks summary judgment and asserts that White's claims for age and disability discrimination fail as a matter of law (Filing No. 48 at 16). They argue further that any alleged failure to accommodate claims under the ADA also fails because White is not a qualified individual with a disability. *Id.* at 27. Finally, Valeo asserts that White's FMLA interference and retaliation claims are without merit. *Id.* at 28, 31. The Court will first address the ADEA and FMLA claims before turning to the substantive claims.

## A.   ADEA Claim and FMLA Retaliation Claim

White abandoned his ADEA claim and his FMLA retaliation claim in his response to Valeo's motion. *See Teklehaimanot v. Park Ctr., Inc.*, 804 F. Supp. 2d 886, 902 (N.D. Ind. 2011) ("those claims are abandoned because they were not addressed in the response to the motion for summary judgment."). White offered no response to Valeo's arguments in favor of summary judgment on those claims, therefore, the Court will consider his ADEA and FMLA retaliation claims waived. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that because the plaintiffs "did not provide the district court with any basis to decide their

claims, and did not respond to the City's arguments, these claims are waived"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

The Court **grants** summary judgment for Valeo on White's ADEA claim in Count II and FMLA retaliation claim in Count IV.

**B.   ADA Discrimination Claim**

The ADA provides that a covered employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). To support a claim under the ADA, a plaintiff must show: "1) that [he] is disabled; 2) that [he] is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against [him] because of [his] disability or failed to make a reasonable accommodation." *Wilson v. Regal Beloit Am., Inc.*, 521 F. Supp. 3d 760, 772 (S.D. Ind. 2021) (quoting *Stevens v. Ill. DOT*, 210 F.3d 732, 736 (7th Cir. 2000)).

Valeo asserts that White's disability discrimination claim fails because (1) he is not a qualified individual with a disability; (2) he was not meeting Valeo's legitimate expectations; (3) similarly situated employees outside of his protected class did not receive more favorable treatment; (4) he cannot show that the nondiscriminatory reason given for his termination was pretextual; and (5) he cannot show his disability was the "but-for" cause of his termination (Filing No. 48 at 17–18).

**1.   Disabled individual under the ADA**

Valeo argues that White never reported that he had disability and therefore, "Valeo had no record of a disability or regarded him as disabled" thus he cannot show that he has a disability as defined by the ADA (Filing No. 48 at 18). The doctor's notes that were left with the security

guards were vague and only mentioned that White was seen for an illness or injury. *Id*. Valeo argues that such notes are insufficient to state a claim for disability discrimination. *See Christner v. Am. Eagle Airlines, Inc*., No. 02 C 0211, 2003 WL 21267105, at *3 (N.D. Ill. May 30, 2003) (finding that doctor's disability certificates indicating plaintiff was unable to work was not conclusive evidence that plaintiff was disabled).

Valeo argues that White's text messages to his supervisors—Holder and Thevenot—about his medical condition were insufficient to demonstrate disability (Filing No. 48 at 19). White's message to Holder only mentioned that he was sick and receiving treatment and his message to Thevenot only indicated that he was being treated for stomach ulcers and hoping to return to work. *Id*. Moreover, neither supervisor was involved in White's termination decision and the ultimate decision-maker, Thomas, had never seen any text messages related to White's condition. The designated evidence is that neither Cutshall nor Thomas saw White's text messages to Thevenot prior to this litigation. *Id*.

Valeo maintains that White's doctor's notes only indicated that he was advised to be off work due to an unspecified illness or injury and that neither Cutshall nor HR would have known about his medical condition. White's testimony that he worked forty-five hours each week at his pizza shop prior to taking his absences and promptly returned to working there after his return to Valeo in June 2019, belies his argument that he was disabled and "limited from working." *Id*. at 20. At the time White's termination was reviewed, Cutshall and Thomas only knew that White had submitted the doctor's notes referencing "illness or injury" and this was insufficient to establish that White disabled or regarded as disabled. *Id*.

White responds that there is no dispute that he was being treated for bleeding ulcers which impaired his ability to walk, lift, and bend (Filing No. 61 at 19). Citing 42 U.S.C. § 12102, he

points out that an impairment of a major bodily function is included in the ADA's definition of disability which means he was disabled. *Id.* The doctor's notes he dropped off in May 2019 and June 2019 provided sufficient information to substantiate that he had a physical impairment that substantially limited a major life function, he was under his doctor's care, and he had a return-to-work date. *Id.* White asserts that even if his doctor's notes were as ambiguous as Valeo suggests, they were sufficient to notify Valeo that he had a disability that required accommodation and Valeo was required to ask for clarification. *Id.* at 20. Cutshall never contacted White when she received his doctor's notes nor did she ask for clarification or request additional information about his alleged disability. White maintains that there is no question that Valeo was aware of his disability because he provided his doctor's notes to Cutshall for two months during his absences in 2019. *Id.* at 21.

Valeo replies that the "vague notes" given to the security guards are insufficient to state a claim for disability discrimination (Filing No. 64 at 10). It reiterates that neither Cutshall nor Thomas saw any text messages between White and his supervisors prior to this litigation and would only have been aware of the insufficient doctor's notes. *Id.* In his deposition testimony, White that Cutshall and HR "would have no idea" if he was injured or ill and they would not have known what type of injury or illness he was experiencing. *Id.*

Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). Generally, to be substantially limited a person must be "'either unable to perform a major life function, or [be] significantly restricted in the duration, manner, or condition under which the [person] can perform a particular major life activity, as

12

compared to the average person in the general population."' *Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002) (quoting *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001)). "Major life activities" include the basic functions of life such as "caring for oneself, performing manual tasks, . . . standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, . . . and working." 29 C.F.R. § 1630.2(i).

In viewing the facts in the light most favorable to White as the non-moving party, the Court determines that he provided sufficient notice of his disability and thus, was disabled under the definition of the ADA because his bleeding ulcers were a physical impairment that substantially limited major life activities: working, lifting, and bending. *See* 42 U.S.C. § 12102(1)(A).

## 2.   Qualified Individual with a Disability under the ADA

In establishing that White was disabled during May 2019 and June 2019, the Court examines whether White was a qualified individual with a disability under the ADA. The ADA makes it unlawful for an employer to discriminate against a "qualified individual on the basis of disability." 42 U.S.C § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *Severson v. Heartland Woodcraft, Inc.,* 872 F.3d 476, 480 (7th Cir. 2017). Valeo asserts that White cannot demonstrate that he is a qualified individual because of his unexcused absences were in violation of the company attendance policy. (Filing No. 48 at 18 and 21). Employee attendance is an essential function of the Team Lead position and White demonstrated that he was unable to meet this essential function. *Id.*

White responds that he could perform the essential functions of his position with or without a reasonable accommodation (Filing No. 61 at 22). He denies that "excessive absenteeism"

13

prevented him from meeting Valeo's legitimate employment expectations.  He argues that Valeo's attendance policy rule that an employee's absence could be removed if they had perfect attendance for ninety days or 520 hours was discriminatory because it did not remove attendance points if an employee took FMLA or short-term disability leave during that period.  *Id*. at 23.  Ultimately, if Valeo's credit policy was applied to him, he would not have been subject to termination.

Valeo replies that White's contention that the attendance policy was discriminatory along with the argument that he would not be subject to termination if the point crediting rule applied to him is unsupported and false (Filing No. 64 at 13).  White was not eligible for attendance credit and it is undisputed that the credit policy only applied to paid leave of absences and not unpaid leaves like those taken by White.  *Id*.  Because White took unpaid leave in February 2019 and then again in May 2019, he was not eligible to be credited attendance points.  Additionally, White would have accrued over ten points anyway because he did not appear for work between May 4, 2019 and June 21, 2019, which violated the attendance policy and made him subject to termination. *Id*.

The Seventh Circuit holds the determination of whether an individual is a "qualified individual with a disability" is a two-step test:

> "First, we consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, license, etc." *Bombard v. Fort Wayne Newspapers, Inc*., 92 F.3d 560, 563 (7th Cir. 1996) (quoting 29 C.F.R. app. § 1630.2(m)). Second, if the individual does satisfy the position's prerequisites, we "consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* (quoting same).

*Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir.2001) (affirming, in part, employee was not qualified individual with disability under ADA for failure to perform essential job functions with or without reasonable accommodations).

14

It is undisputed that White satisfied the prerequisites of the Team Lead position and so step one of the two-part inquiry is fulfilled to determine that he was a qualified individual. *See, Hamm v. Exxon Mobil Corp.*, 223 F. App'x 506, 508 (7th Cir. 2007) (finding no dispute plaintiff satisfied first inquiry the Court turned to second inquiry). However, the Court finds that White fails the second step of the inquiry because the evidence in the record shows that he could not perform the essential functions of his position, with or without a reasonable accommodation.

White "bears the burden of proof on the issue of whether he is a 'qualified individual' under the ADA". *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) (quoting *DeLuca v. Winer Indus.*, 53 F.3d 793, 797 n. 3 (7th Cir.1995)). The evidence shows that White conceded that he "couldn't have done anything" during the period he was experiencing symptoms from his bleeding ulcers (Filing No. 62-1 at 36). White admitted that he was in significant pain and testified there was "no getting out of bed," and he was bound to either a bed or his chair. *Id*. at 9. White's doctor's notes stated, without stipulations, that he was to be off work which belie any argument that he could perform his job with or without reasonable accommodations. *See McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 968 (7th Cir. 2020) ("Thus, absent evidence to the contrary, a doctor's view that an employee cannot 'return to work ... in any position' means an employee cannot 'establish that she is a 'qualified individual with a disability' under the ADA.'") (quoting *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996)).

The Court determines that White has not demonstrated that he was a qualified individual with a disability because his disability (bleeding ulcers) prevented him from coming to work regularly and performing the essential functions of his job as Team Lead. *See Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("A plaintiff whose disability prevents [them] from coming to work regularly cannot perform the essential functions of [their] job, and thus

cannot be a qualified individual for ADA purposes."). White's own proffered evidence demonstrates that he could not perform the essential functions of his position and he has not established that regular attendance was not required of his position. *See Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 489 (7th Cir. 2014) (finding plaintiff could not satisfy the essential function of regular attendance which made her ineligible for protection under the ADA).

Thus, Valeo's request for summary judgment on White's ADA discrimination claim is **granted** because he was not a qualified individual with a disability at the time of his termination decision.

**C.    Failure to Accommodate Claim**

In order for White to establish a *prima facie* case of Valeo's failure to accommodate in accordance with the ADA, he must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (quoting *Sears, Roebuck & Co.*, 417 F.3d at 797)). To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of his claim. *Id* at 748 (quoting *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir.2009)). Additionally, "the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) (quoting *Jovanovic v. Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000)).

Because the Court has determined that White was not a qualified individual with a disability under the ADA, he fails the first prong of the three-prong inquiry to establish Valeo's failure to accommodate. Failure of the first prong is fatal to White's claim. *See Rodrigo v. Carle*

16

*Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018) (finding plaintiff's claim for failure to accommodate "fail at the start because he cannot demonstrate that he is a 'qualified individual.'"). Further, the Court notes that both procedure and substance preclude White's failure to accommodate claim from moving forward.

In White's Equal Employment Opportunity Commission Charge of Discrimination ("EEOC Charge"), he alleges he was "never told to complete any paperwork regarding FMLA or short term disability nor did [he] ever receive an accommodation." (Filing No. 63-2 at 2.) White reiterates the same in the factual allegations in his Complaint but does not actually raise a claim for failure to accommodate (Filing No. 1 at 2) ("Plaintiff was never told to apply for FMLA or short-term disability nor did Plaintiff ever receive an accommodation."). The first time White specifically raises a failure to accommodate claim is in his response in opposition to Valeo's Motion (Filing No. 61 at 19). While Valeo asserts that this claim fails on the merits (*see* Filing No. 48 at 27), they also argue that any failure to accommodate claims by White should also fail because he did not specifically allege as much in his EEOC Charge or Complaint (Filing No. 64 at 19). Valeo's argument is well-taken and the Court agrees.

This Court has held that where a plaintiff has not alleged a failure to accommodate in either the EEOC charge or the complaint, such claim is barred when raised in a brief in response. *See Beal v. Muncie Sanitary Dist.*, No. 1:19-cv-01506-TWP-TAB, 2020 WL 6205641, at *7 (S.D. Ind. Oct. 22, 2020) ("Because Beal failed to raise a failure-to-accommodate claim in either his EEOC Charge or his Amended Complaint, and because this claim fails on the merits, summary judgment is appropriate."). Generally, a "plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the *charges actually*

*raised*."  *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (emphasis added) (quoting *Green v. Nat'l Steel Corp*., 197 F.3d 894, 898 (7th Cir. 1999)).  In his EEOC Charge, White does not allege that Valeo failed to accommodate him, rather he states that he never received an accommodation—a subtle but nuanced distinction—and raises claims for age and disability discrimination (Filing No. 62-2).  Nowhere in White's EEOC Charge or his Complaint does he allege that he requested a reasonable accommodation because of his disability and Valeo failed to provide it.  *See Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) ("An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations."). White's four-count Complaint only raises a claim for discrimination under the ADA, namely, he was terminated because of his disability.  The Seventh Circuit has held that discriminatory treatment under the ADA is not reasonably related to a failure-to-accommodate claim.  *See Green*, 197 F.3d at 897 ("[A] failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA.").

The Court finds that White did not sufficiently raise a failure to accommodate claim in his Complaint (and arguably his EEOC Charge), despite the passing mention of not receiving an accommodation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (instructing that allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). Similar to this Court's determination in *Beal*, White's lone factual allegation in the Complaint that he did not receive an accommodation is insufficient to inform Valeo that he would argue they failed to accommodate him.  *See Hecker v. Deere & Co*., 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted) (maintaining that a complaint must include "enough facts to state a claim to relief that is plausible on its face.").  The Complaint and the designated evidence demonstrates that no request for a reasonable accommodation was made to

Valeo which also undercuts White's failure to accommodate claim. *Wells v. Winnebago Cty., Ill.*, 820 F.3d 864, 867 (7th Cir. 2016) ("[O]ur cases have consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations . . . before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation.") (citations omitted).

The Court will also address White's argument that Valeo failed to engage in an interactive process with him to determine appropriate accommodations (Filing No. 61 at 21). Even crediting White's version of events—which the Court is obligated to do at the summary judgment stage— the interactive process is not an end in itself. *See Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014) ("Because the interactive process is not an end in itself, it is not sufficient for [an employee] to show that [an employer] failed to engage in an interactive process or that it caused the interactive process to break down.") (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1015– 1016 (7th Cir. 2000)). Furthermore, failure to engage in the interactive process "is actionable if it prevents identification of an appropriate accommodation for a *qualified individual*," which White is not. *Spurling v. C & M Fine Pack, Inc*., 739 F.3d 1055, 1062 (7th Cir. 2014) (emphasis added).

Therefore, summary judgment is **granted** for Valeo because White is not a qualified individual with a disability and because he did not sufficiently raise a failure to accommodate claim in his Complaint.

## D.     **FMLA Interference**

The FMLA prohibits employers from interfering with an employee's use of or attempt to exercise his right to FMLA leave. *See Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010); *de la Rama v. Ill. Dep't of Human Servs*., 541 F.3d 681, 686 (7th Cir. 2008). To support an FMLA interference claim, a plaintiff must show: "(1) [he] was eligible for the FMLA's protections,

(2) [his] employer was covered by the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] provided sufficient notice of her intent to take leave, and (5) [his] employer denied [him] FMLA benefits to which [he] was entitled." *Guzman v. Brown Cty.*, 884 F.3d 633, 638 (7th Cir. 2018).

White alleges in Count III of his Complaint that Valeo violated the FMLA when it interfered with his FMLA rights (Filing No. 1 at 3). Valeo asserts that White's FMLA interference claim fails because he was not entitled to FMLA leave at the time of his termination, he did not provide sufficient notice of his intent to take leave, and Valeo did not deny him leave to which he was entitled (Filing No. 48 at 28). Valeo does not dispute that White was eligible for FMLA protections and that they are covered by the FMLA. As such, the Court will consider prongs one and two of the FMLA interference inquiry satisfied, and will focus its analysis on prongs three, four, and five.

### 1.    Entitled to leave under the FMLA

An employee is entitled to FMLA leave if he suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) (holding that eligible employees are entitled to 12 weeks unpaid leave per year for serious health conditions rendering them unable to perform their job). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Thus, for White to have been entitled to FMLA leave, he must have suffered from a "serious health condition," and he must have been unable to

perform the duties of a Team Lead at the Valeo plant.  *See Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998).

Valeo argues that White fails the third prong of the five-part interference inquiry because he would have already exhausted his FMLA entitlement at the time of his termination (Filing No. 48 at 29).  Valeo asserts if White had "properly contacted Guardian to have his May and June 2019 absences approved under the FMLA — which he did not — he still would have exhausted his allotted 12 weeks as of June 1, 2019."  *Id*.  By March 25, 2019, White had 170 hours, or 4.25 weeks, of FMLA leave remaining through August 2019 (Filing No. 47-6).  Because White was off work for 252 hours (or seven weeks) from May through June 2019, he would have exceeded his potential FMLA by eighty-two hours or over two weeks.  Valeo contends White was not entitled to FMLA leave for any of his unexcused absences after June 1, 2019.

White responds that there is no dispute that he suffered from a serious health condition which rendered him unable to perform the functions of his position for a period of time (Filing No. 61 at 14).  White asserts that he never received any FMLA benefits because Valeo never informed him of his FMLA rights, disproving Valeo's argument that he would have exhausted his available FMLA leave prior to his termination.  White argues that Valeo had a duty to notify him that his FMLA was exhausted following the multiple doctor's notes that he left for Cutshall which detailed his illness or injury that required him to be off work.

The Court agrees with White that it is undisputed that he suffered from a serious health condition.  The Court also finds that the evidence presented shows that he was receiving continuing treatment which prevented him from performing the duties of Team Lead.  The Seventh Circuit holds that treatment "include[s] examinations to determine if a serious health condition exists and evaluation of the condition."  *Jones v. C & D Techs., Inc.*, 684 F.3d 673, 679 (7th Cir. 2012).  The

evidence in the record supports that White's doctor's notes established that he was receiving ongoing examinations and evaluations of his medical condition and that he was unable to return to work.  Viewing the evidence in a light most favorable to White, a reasonable jury could find that White suffered a serious health condition, and he was undergoing continuing treatment by a health care provider entitling him to FMLA leave.

### 2.  <u>Sufficient notice of intent to take leave</u>

The Seventh Circuit holds that the "adequacy of notice is a fact-specific question" and generally an "employee's bare assertion to being 'sick' is insufficient" to put the employer on notice that the employee may qualify for FMLA leave.  *Burnett v. LFW, Inc.*, 472 F.3d 471, 479 (7th Cir. 2006) (quoting *Phillips v. Quebecor World RAI, Inc*., 450 F.3d 308, 311 (7th Cir. 2006)); *see also Collins v. NTN–Bower Corp*., 272 F.3d 1006, 1008 (7th Cir. 2001).  However, the Seventh Circuit specifies that "[t]he employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition."  *Burnett*, 472 F.3d at 479.

Valeo asserts that because White failed to follow its medical leave policies and procedures in requesting leave, he was not entitled to FMLA leave for his unexcused absences (Filing No. 48 at 30).  Even though White had previously properly requested FMLA in the past and was ostensibly aware of the procedures, he admitted to never contacting Guardian in May and June 2019 and he never contacted Cutshall despite being told to do so by his supervisor (Filing No. 64 at 9).

White counters that he provided Valeo with sufficient notice of his need for FMLA leave through the continuous doctor's notes that he left for Cutshall while he was off work (Filing No. 61 at 15  White asserts that the notes informed Valeo that he was unable to work due to illness, he was under a doctor's care, and the notes provided dates for his return to work.  White maintains that he did follow Valeo's internal leave policy because he informed his direct supervisor about his

serious medical condition and provided Cutshall with ongoing follow-up medical documents indicating his continued need to be off work. Thus, the level of information he provided was sufficient to demonstrate that he may have been entitled to FMLA, which triggered Valeo's duty to request additional information. White asserts that his notice to Valeo of his intent to take leave was sufficient, and Valeo failed to provide him with sufficient notice on whether his leave would be designated as FMLA or otherwise instruct him on his eligibility or obligations under the statute. White also argues Valeo failed to properly train its key personnel to recognize an FMLA-qualifying event. *Id*. at 16–18.

White's reference to *Lutes v. United Trailers*, Inc., 950 F.3d 359, 366 (7th Cir. 2020) in support of his argument is well-taken. In *Lutes*, the Seventh Circuit examined an FMLA interference claim and determined that FMLA employee internal notice regulations do not control whether an employer's preceding violation of FMLA employer obligations is excused by an employee's subsequent failure to comply with the regulations of an attendance policy. *Lutes,* 950 F.3d at 367. The Court disagrees with Valeo's argument that an employee's failure to comply with his employer's internal leave policies and procedures is a sufficient ground for termination and forecloses an FMLA claim if, as White argues, the employer violated the FMLA by failing to inform the employee of his FMLA-qualifying leave. While White undoubtedly had notice obligations to Valeo (*see* 29 C.F.R. §§ 825.302–303), Valeo had explicit obligations under § 825.300 to provide specific notices of eligibility, rights and responsibilities, and designation of FMLA to White. During the period between May 3, 2019 and June 24, 2019, Cutshall received several doctor's notes from White that were left with Valeo security. Although Cutshall contends that she attempted to call White directly at least twice, White contends that he did not receive a call from her regarding his absences during this time (Filing No. 62-1 at 29). Cutshall concedes

that she did not follow up or leave any voicemails for White (Filing No. 62-3 at 12) in order to provide employer notice.  Failure to provide such notices by the employer can be deemed as interference of the employee's FMLA.  29 C.F.R. § 825.300(b)(c)(d)(e).

The Court finds that triable issues of fact exist regarding whether White's notice was sufficient to inform Valeo of his intent to take FMLA leave and whether Valeo interfered with his FMLA by failing to provide mandatory notices designating FMLA leave. *See* 29 C.F.R. § 825.300(d)(1) ("When the employer has enough information to determine whether the leave is being taken for a FMLA–qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances.").  There is a genuine dispute of fact as to whether Valeo should have probed further into White's reported illness following notice that he may have had an FMLA-qualifying condition. *See* 29 C.F.R. § 825.301 ("In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA–qualifying.").

### 3.   **Employer denial of employee's FMLA benefits to which they are entitled**

The final prong of the FMLA interference inquiry is whether an employer denied a plaintiff-employee's FMLA benefits to which he was entitled.  *See Goelzer*, 604 F.3d at 993.

Valeo argues that it could not have violated White's FMLA rights because he was not eligible for FMLA leave as of June 1, 2019, (assuming, *arguendo*, he had been granted FMLA leave at the beginning of May 2019) or at the time of his termination on June 11, 2019, as it would have been exhausted (Filing No. 48 at 28).  White counters that Valeo failed to inform him of his FMLA rights and never provided notice that his leave had been designated as FMLA and so he

was denied FMLA benefits (Filing No. 61 at 18).  White contends that if he had been properly informed of his FMLA entitlement, he would have requested a reasonable accommodation in the form of additional leave or would have structured his leave differently.  *Id*. at 19.

The Court determines that White has sufficiently shown that Valeo's failure to provide FMLA information prejudiced him.  *See Ragsdale v. Wolverine World Wide, Inc*., 535 U.S. 81, 89, (2002) (explaining FMLA "provides no relief unless the employee has been prejudiced by the violation"); *Ridings v. Riverside Med. Ctr*., 537 F.3d 755, 764 (7th Cir. 2008) (holding no interference because employee failed to allege employer's failure to provide FMLA information prejudiced her). The Seventh Circuit has held that where a plaintiff can show prejudice— specifically that they would have structured their leave differently had they received proper FMLA information—an interference claim can survive summary judgment.  *See Lutes*, 950 F.3d at 368 ("Prejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently.") (quoting *Vannoy v. Fed. Res. Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) (citing cases)).

As the Court described above, genuine issues of material fact exist concerning whether Valeo failed to provide mandatory notices to White and failed to probe further into his reported condition.  The applicable regulations state that an injury occurs when an employee would have structured his leave differently had the employer properly designated the requested leave as being taken under the FMLA.  *See* 29 C.F.R. § 825.301(e). Viewing the evidence in a light most favorable to White, a reasonable jury could find that he was denied such benefits (like mandatory notices) which forecloses summary judgment for Valeo. White's FMLA interference claim in Count III survives summary judgment.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** Defendant Valeo's Motion for Summary Judgment (Filing No. 46).   Valeo is **granted** summary judgment on White's ADA discrimination claim, failure to reasonably accommodate claim, ADEA discrimination claim, and FMLA retaliation claim, and Counts I, II, and IV are **dismissed**.   Valeo is **denied** summary judgment on White's FMLA interference claim, and Count III may proceed beyond the summary judgment stage.

The parties are directed to contact the Magistrate Judge to schedule a settlement conference before the January 12, 2022 final pretrial conference.

**SO ORDERED.**

Date:  11/22/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Amber K. Boyd
AMBER K. BOYD ATTORNEY AT LAW
amber@amberboydlaw.com

Sarah Elizabeth Larimer
AMBER BOYD LAW
sarah@amberboydlaw.com

Amy Suzanne Wilson
FROST BROWN TODD LLC (Indianapolis)
awilson@fbtlaw.com